IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 06-cv-00810-MJW-BNB

RONNIE R. ROLLAND,

    Plaintiff,

v.

PRIMESOURCE STAFFING, LLC., and
RENEE RAABE,

    Defendants.

---

**MEMORANDUM DECISION AND ORDER**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This matter is before this court pursuant to an Order of Reference Pursuant to 28 U.S.C. § 636(c) issued by District Judge Phillip S. Figa on July 14, 2006. (Docket No. 22).

Defendant Primesource Staffing, LLC ("Primesource"), "is a temporary-to-permanent agency that employs individuals to perform temporary job assignments for clients of Primesource." (Docket No. 32). Defendant Renee Raabe is the owner of Primesource.

In the Complaint, which is not a model pleading, the pro se plaintiff asserts the following. On January 5, 2006, plaintiff, together with other Primesource employees,

attended a job offer tour for a company called Woodstream.  That day plaintiff accepted a job offer in Woodstream's shipping department, and he was told to report to work the following day.  The next morning, at about 6:00, he reported to work at Woodstream and was put to work by the warehouse manager.  While plaintiff was working at that new position, he was approached by Eric Jones who informed plaintiff that he had received information about plaintiff's adverse work performance from Michell Donnell of Primesource, and that based upon that information, plaintiff had to leave the building and call Donnell.  Plaintiff did so, and Donnell told plaintiff that plaintiff was sent away from his new job position for past poor work performance, and, in fact, she was terminating plaintiff's employment with Primesource for that reason without a disciplinary hearing.

The Primesource employee handbook provides that employees will be given evaluations of their job performance and disciplinary notices, yet from June 2005 to January 6, 2006, plaintiff was never provided with any written disciplinary notices for company violations for poor work performance, a disciplinary hearing, or access to his personnel file.  Plaintiff relied on defendants' silence and implied conduct, and thus they are prevented by estoppel from claiming poor job performance.  Defendants had no legitimate business necessity for discharging him from his job; plaintiff had just started the job.  In addition, on January 6, 2006, contrary to its employee handbook, the defendants presented damaging adverse job performance information against plaintiff to the defendants' clients.  Defendants refused to treat him the same compared to other similarly-situated employees because of his race.  Defendants are vicariously liable for

the discriminatory conduct of their employees, management, and agents.

Plaintiff further asserts that "defendant's, its employees, management, and or agents conduct towards plaintiff was malicious, wanton, reckless, and or negligent in disregards for plaintiff civil rights to due process and the equal protection of the law; and prejudice plaintiff, based upon plaintiff, race – black; and failed to use reasonable care." (Compl. ¶ 29). In addition, he contends that "defendant's employee's [sic], agents, and management, acts and omissions stated are demonstrably tantamount to interfering discriminatorily [sic] with plaintiff job position which was contrary to the defendant's employee handbook practices, and or policy – and, in absent of providing plaintiff with any disciplinary warning notices or due process hearing; nor any job performance evaluations." (Compl. ¶ 30).

Plaintiff raises the following four claims for relief: (1) Title VII - racial discriminatory discharge; (2) Title VII - disparate treatment "based on race and estoppel;" (3) Title VII violations and "42 USC. [sic] Section 1981: respondent [sic] superior;" and (4) "negligence Title VII violations." He seeks compensatory and punitive damages.

Defendants have filed a Motion for Summary Judgment and Memorandum Brief in Support Thereof (Docket No. 32). Plaintiff filed a Memorandum in Opposition to the Motion with numerous exhibits (Docket No. 45), and defendants filed a Reply (Docket No. 47). The court now being fully informed makes the following findings, conclusions, and order.

Rule 56(c) provides that summary judgment shall be granted "if the pleadings,

4

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003). "In order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*. . . . The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but '"the content or substance of the evidence must be admissible."' . . . Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is "not suitable grist for the summary judgment mill."'" Adams v. American

Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).  See Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264, 1268 (10th Cir. 1998).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response."  Southway, 149 F. Supp.2d at 1273.  "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist."  Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).  "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment."  Southway, 149 F. Supp.2d at 1274.  "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party."  Id. at 1273.

"Title VII prohibits an employer from terminating any individual because of 'race, color, religion, sex, or national origin,' 42 U.S.C. 2000e-2(a)(1) . . . .  Section 1981, on the other hand, 'provides equal rights to make and enforce contracts and to the benefits of laws for the security of persons and property.'"  Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1181 (10th Cir. 2006) (citations omitted).  Plaintiff here has offered no direct evidence that the defendants discriminated against him on an unlawful basis.  Under

6

such circumstances, for Title VII and § 1981 claims, the Tenth Circuit has adopted the burden-shifting analysis originally set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Antonio, 458 F.3d at 1181. Under that analysis, the "not onerous" burden of establishing a prima facie case is placed upon the plaintiff, to show by a preponderance of the evidence that (1) he belongs to a protected class, in this case a racial minority; (2) he suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Somoza v. University of Denver, 2006 WL 2535092 (D. Colo. Aug. 31, 2006). "[E]stablishing a prima facie case 'creates a presumption that the employer unlawfully discriminated against the employee.' . . ." McCowan v. All Star Maintenance, Inc., 273 F.3d 917, 922 (10th Cir. 2001) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)).

Once the plaintiff has established a prima facie case, the burden shifts to the employer "to rebut the presumption of discrimination by producing evidence the termination was based on a legitimate, nondiscriminatory reason. 'The explanation provided must be legally sufficient to justify a judgment for the defendant . . . to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.'" Id. (quoting Burdine, 450 U.S. at 255-56). The Tenth Circuit has stated that in determining whether a particular defendant has met its burden of coming forward with facially legitimate, nondiscriminatory reasons for the employment actions,

> [t]he defendant's burden is merely to articulate through

> some proof a facially nondiscriminatory reason for the
> [action]; the defendant does not at this stage of proceedings
> need to litigate the merits of the reasoning, nor does it need
> to prove that the reason relied upon was bona fide, nor does
> it need to prove that the reasoning was applied in a
> nondiscriminatory fashion. . . . However, the proffered
> reason for the action taken against the minority employee
> must be reasonably specific and clear.

EEOC v. Flasher Co., 986 F.2d 1312, 1316 (10th Cir. 1992) (citations omitted).

Once the defendant has made such a showing, the plaintiff "must then meet [his] ultimate burden of persuading the court by demonstrating the proffered reason is not the true reason either directly by showing a discriminatory reason more likely motivated the employer or indirectly by challenging the employer's reason as unworthy of credence." McCowan, 273 F.3d at 922 (citing Burdine, 450 U.S. at 256). "If the defendant is able to articulate a valid reason, the plaintiff can avoid summary judgment 'only if [he] is able to show that a genuine dispute of material fact exists as to whether the defendant's articulated reason was pretextual.'" Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999).

> There are typically three ways that a plaintiff makes a showing of pretext:
>
> (1) with evidence that the defendant's stated reason for the adverse
> employment action was false . . . ; (2) with evidence that the defendant
> acted contrary to a written company policy prescribing the action to be
> taken by the defendant under the circumstances . . . ; or (3) with evidence
> that the defendant acted contrary to an unwritten policy or contrary to
> company practice when making the adverse employment decision
> affecting the plaintiff. A plaintiff who wishes to show that the company
> acted contrary to an unwritten policy or to company practice often does so
> by providing evidence that he was treated differently from other similarly-
> situated employees who violated work rules of comparable seriousness.

Kendrick v. Penske Transp. Servs, Inc., 220 F.3d 1220, 1230 (10th Cir. 2000) (citations

and footnotes omitted).

An exhibit to defendants' motion is the affidavit of Eric Jones, a Primesource employee. (Docket No. 32, Ex. D). Jones states that on January 5, 2006, at approximately 5 p.m., he received an order from Woodstream to fill a position the following day. He immediately sent out "an ASAP order" for someone to work that job, and after a few moments, a co-worker, Dane, e-mailed back asking if the plaintiff could go. Initially, Jones responded affirmatively, but he claims that after looking up the plaintiff's profile, he realized that plaintiff would not be a good fit for the position as he had a bad work history with Primesource, and Jones could not afford to send him to that client. Jones claims he then e-mailed Dane back, letting him know that the plaintiff could not go and that Dane needed to advise plaintiff accordingly, which he claims Dane did.[1] Jones arrived at Woodstream as the on-site manager the following morning at approximately 6:45 a.m., at which time he noticed someone sitting outside, waiting to start the position. Jones brought that employee into the building, and Jones was approached by Gary Juniel, the Woodstream shipping supervisor at the time, who advised that there was a Primesource employee already working in the back. Jones went to see who it was, and he saw the plaintiff. Jones claims he pulled the plaintiff aside and explained to him that he could no longer work there because of the reasons stated above, and that the person Jones met in the front of the building that morning would be taking plaintiff's place. Jones claims plaintiff asked to talk to him privately, and Jones took plaintiff into the conference room and explained to plaintiff his poor

---

[1]Plaintiff claims he never received such a call.

work history with Primesource and that Jones did not have the confidence that plaintiff would do a good job. Jones further claims that at that time he let plaintiff know that "we couldn't go any further with the process." Jones claims that the plaintiff's' "race had absolutely nothing to do with his termination." (Docket No. 32, Ex. D).

In his lengthy response (Docket No. 45), plaintiff asserts that summary judgment is improper because there are genuine issue of material fact with respect to each element of his cause of action. Plaintiff states in his response that

> [b]ut for, defendant wanton reckless indeference [sic] towards plaintiff, in not allowing plaintiff to review the advers [sic] client memo's that were a part of plaintiff's job performance file/or records, as compared to the review process extented [sic] to white employee's, whether they took advantage of reviewing their employee file <u>or not</u>, plaintiff, by the defendant's employee manager, Michell Donnell, in the scope: (1) of her employmeient [sic] for defendants, deprived plaintiff of the equal opportunity to take advantage of defendant's problem resolution procedure; in defendants employee handbook, to avoid harm by, dening [sic] plaintiff the benefit of, as demonstrated, to review plaintiff's job performance records and related documentation.
>
> . . .
>
> Plaintiff has demonstrate and based upon the fact's [sic], undisputed material facts, exhibits, deposition responses of plaintiff, exhibits of defendants, plaintiff has presented direct evidence of that defendant's employee manager, subject plaintiff to racial disparate treatment and racial discrimination which was based on plaintiff race.

(Docket No. 45-2 at 33-35).

This court, however, agrees with the defendants that the plaintiff has not established a prima facie case for his claim of racial discrimination because he has made no showing that any of the defendants' actions occurred under circumstances giving rise to an inference of discrimination. As noted by the defendants, plaintiff

alleges that Primesource did not provide him with written performance reviews or a hearing and did not follow its disciplinary policy prior to his termination. Plaintiff, however, admitted during his deposition, and the Employee Handbook of Primesource bears out, that there is no requirement for written reviews or such a disciplinary policy, nor is there any policy that provides any type of hearing or procedure prior to terminations. (See Pl.'s Dep. pp 134-36, 139). During his deposition, plaintiff admitted that Primesource terminated employees all of the time and did not provide anyone with a hearing before doing so. (Pl.'s Dep. pp. 142 lines 1-16 ; 147 at lines 21-25 ["People get terminated from there every day."]; 148 at lines 1-16). Furthermore, the handbook itself states that the job was at-will. (Docket No. 32 at 2) ("All PrimeSource employees are employed-at will. This means that no employee is employed for a specific period of time and all employees are subject to termination at any time, for any reason, with or without cause or advance notice. . . .").

Simply put, plaintiff has not submitted any evidence that he was treated any differently than any non-protected class employees at Primesource. Even if plaintiff in fact was not allowed to review or was not provided a copy of the computer notes pertaining to his job performance prior to his termination, he has not demonstrated that his race motivated the denial of his request for review or his termination. As defendants correctly assert, plaintiff's conclusory allegations of discrimination, without more, are insufficient to create a genuine issue of material fact that would defeat defendants' summary judgment motion. Annett v. University of Kansas, 371 F.3d 1233, 1237 (10th Cir. 2004).

11

This court further agrees with the defendants that even if the plaintiff had presented a prima facie case to support his discrimination claims, he has submitted nothing to establish a genuine issue of material fact that the basis for his termination of employment was pretextual.  In fact, documents submitted by the plaintiff himself show that his termination was based on reports Primesource received from company clients regarding plaintiff's poor job performance.  For example, an e-mail concerning one of the clients, Timminco, reports:

> FYI Ronnie came in tonight (Friday night) did not get to his area until 10:30.  Took break at 11:00 (cigarette).  Asked to take his break at 11:30 so he could "re-arrange" some stuff in his backpack.  Was gone until 12:00 when I found him in the break room asleep.  He worked until 12:48 when he asked to clock out and go lay down for a few.  I asked if he wanted to go home, no.  He slept until about 5:10 (I kept checking on him about once an hour- I knew he wasn't dead because he was snoring) when he came and asked if he could just cut out.  I said ok. . . .

(Pl.'s Ex. X).

Based upon the findings above, summary judgment shall be entered for the defendants on the plaintiff's claims pursuant to Title VII and § 1981.  Likewise, summary judgment shall be entered for the defendants on the plaintiff's negligence claim, which is premised on his discrimination claim, namely, that defendants owed a duty not to discriminate against him and terminate him due to race.

In his response to the defendants' motion, plaintiff asks this court to permit him to amend his Complaint to add Ameristaff[2] as a defendant (Docket No. 45 at 9-10) and asks the court to strike one of the defendants' affirmative defenses (Docket No. 45-2 at

---

[2] Ameristaff, LLC, changed its name to Primesource Staffing, LLC.  (See Docket No. 49).

8). Pursuant to the Local Rules, however, plaintiff cannot include motions within his response. See D.C.COLO.LCivR 7.1(C) ("A motion shall not be included in a response . . . to the original motion. A motion shall be made in a separate paper."). Even if the court were to entertain plaintiff's motion to amend, based on the findings above, plaintiff's requested amendment to his Complaint is futile. In addition, his motion to amend is untimely as the deadline for such amendments was August 25, 2006. (Scheduling Order, Docket No. 17 at 4). Plaintiff's motion to strike would also be denied on the merits substantially for the reasons stated in the defendants' Reply (Docket No. 49).

Finally, after he filed his response to the summary judgment motion, plaintiff moved for the court to take judicial notice of facts pursuant to Fed. R. Evid. 201, but the "facts" are not the kinds of facts that are judicially noticed pursuant to Fed. R. Evid. 201(b).

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that the Defendants' Motion for Summary Judgment (Docket No. 32) is **GRANTED**. The clerk shall enter judgment in favor of defendants and against plaintiff, dismissing all of the plaintiff's claims with prejudice. Defendants may have their costs by timely filing a bill of costs. It is thus further

**ORDERED** that to the extent the plaintiff in his Response is moving to amend his complaint and to strike defendants' affirmative defense numbered 16 in their Answer, such motions are **DENIED**. It is further

**ORDERED** that Plaintiff's Motion Request for Court to Take Judicial Notice of

13

Facts (FRE) 201 (Docket No. 47) is **DENIED**.

Done this 18th day of October 2006.

BY THE COURT

s/ Michael J. Watanabe
Michael J. Watanabe
U.S. Magistrate Judge